UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANNA MARY NOZKOWSKI, Individually and
as Administratrix and on Behalf of the
Estate of Ashley Meg Greene, Deceased,

                      Plaintiff,

    -against-

UNITED STATES OF AMERICA,

                      Defendant.

Docket No.

**COMPLAINT**

---

Plaintiff, ANNA MARY NOZKOWSKI, as Administratrix and on Behalf of the Estate of Ashley Meg Greene, deceased, by her attorneys, Foulke Law Firm, as and for her Complaint against the United States of America, respectfully alleges as follows:

## Jury Demand

1. Plaintiff, Anna Mary Nozkowski, pursuant to 38(b) of the Federal Rules of Civil Procedure and other applicable rules, demands a trial by jury of all issues in this action.

## Nature of Action

2. This is an action brought under the Federal Tort Claims Act for monetary damages for personal injury, pain, suffering, and wrongful death sustained by plaintiff and the decedent as a result of defendant failing to warn decedent and law enforcement of serious and imminent threats to her; defendant providing sub-standard medical, nursing, and psychiatric care and supervision and medical, nursing, and psychiatric care negligently provided by defendant at the Veterans Administration Hospitals ("VA") located in Montrose, NY; Wappingers Falls, NY; and Albany, NY.

3. Richard Boniface ("Boniface"), 70 years old, murdered Ashley Meg Greene, 33 years old, on August 19, 2019. Boniface was a Vietnam veteran who has PTSD and treated at the aforementioned VA facilities and locations. The VA and its treating therapists, nurses, psychologists,

and psychiatrists were negligent in their failure to warn the decedent and law enforcement of his violent tendencies and the substantial risk or threat of Boniface doing serious harm to decedent, such warning to be provided pursuant to New York Mental Hygiene Law § 9.46 and other statutes.

## The Parties, Jurisdiction and Venue

4. The decedent, Ashley Meg Greene, was murdered by VA patient Richard Boniface on August 19, 2019. At the time she was murdered by Boniface, and at all times mentioned herein, the decedent Ashley Meg Greene was a resident of the State of New York, County of Sullivan residing at 286 Mount Vernon Road, Wurtsboro, NY 12790.

5. The plaintiff Anna Mary Nozkowski is the administratrix on behalf of the Estate of Ashley Meg Greene, deceased. She is also the mother of Ashley Meg Greene.

6. On August 13, 2020, the Surrogate's Court of the State of New York, County of Sullivan, ordered and decreed that letters of administration be issued to Anna Nozkowski for the Estate of Ashley Meg Greene, deceased.

7. At all times mentioned herein, plaintiff was likewise a resident of the State of New York, County of Sullivan residing at 286 Mount Vernon Road, Wurtsboro, NY 12790.

8. The defendant is the United States of America.

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1346, 2671-2680 et seq., commonly referred to as the Federal Tort Claims Act. Venue is proper pursuant to 28 U.S.C. § 1391 and the damages giving rise to this claim occurred in this district.

10. Plaintiff pleads pursuant to Title 28 U.S.C.§§ 2672 and 2675 that the claims set forth herein were timely filed and presented administratively to defendant's agency, the Department of Veterans Affairs. The Department of Veterans Affairs (hereinafter "VA") received plaintiff's claim and Standard Form 95 Administrative Tort Claim on April 20, 2020.

11. On December 9, 2020, the VA denied the claims. Accordingly, plaintiff has complied with all jurisdictional prerequisites and conditions precedent to the commencement and prosecution of this litigation.

12. This case is commenced and prosecuted against the United States of America pursuant 28 U.S.C. § 1346, 2671-2680 et seq., commonly referred to as the Federal Tort Claims Act. Liability of the United States of America is predicated on 28 U.S.C. § 1346 and 2674 as the personal injuries, resulting damages, and wrongful death of which the complaint is made were proximately caused by the medical malpractice, negligence, gross negligence, and wrongful acts and omissions of the employees and agents of the United States of America at the VA Hudson Valley Healthcare System (Montrose VAMC and Castle Point VAMC) and Albany Stratton VA Medical Center, while acting within the scope of their employment, under circumstances where the Untied States of America, if a private person, would be liable to plaintiff in the same manner and to the same extent as a private individual under the laws of the state of New York.

13. Veterans Affairs is an agency of the United States of America. The United States of America, through its agency, Veterans Affairs, at all times material hereto and prior thereto, owned, operated, managed, and controlled the healthcare facilities known as the VA Hudson Valley Healthcare System, Montrose Campus, located at 2094 Albany Post Road, Montrose, NY 10548; the VA Hudson Valley Healthcare System, Castle Point Campus, 31 Castle Point Road, Wappingers Falls, NY 12590, as well as the Albany Stratton VA Medical Center, 113 Holland Avenue, Albany, NY 12208.

14. At all times material hereto, and prior thereto, all persons involved in the medical, psychiatric, and healthcare services provided to Richard Boniface at the aforementioned facilities were agents, servants, and/or employees of Veterans Affairs or the United States of America and were acting within the scope of such employment.

**Facts**

15. On or about August 19, 2019, Ashley Meg Greene (hereinafter "Ashley Greene") age 33 and in the second trimester of her pregnancy was residing at her residence located at 286 Mount Vernon Road, Wurtsboro, NY in the County of Sullivan.

16. On August 19, 2019, the deceased, Richard Boniface, was residing at 933 Roosa Gap Road, Town of Mamakating, Wurtsboro, NY, County of Sullivan.

17. On August 19, 2019, Mr. Boniface proceeded to Ms. Greene's residence and arrived there with several loaded firearms.

18. After gaining entry to the premises, he proceeded to menace and threaten Ms. Greene, putting her in fear for her life.

19. Richard Boniface at all times refused to leave the property and refused to put down his firearms.

20. Putting Ms. Greene in fear for her life, Boniface proceeded to shoot Ms. Greene nine (9) times, including shooting her five (5) in the neck, jaw, upper lip and face, putting Ms. Greene into incredible, indescribable pain.

21. Mr. Boniface continued his assault and continued to fire away at Ms. Greene, also striking her in the right foot/heel as well as twice in the abdomen. Ms. Greene's mother, Anna Nozkowski, who is also the administratrix in this action, ran toward the area of the shooting and asked Mr. Boniface what happened. Mr. Boniface "I just killed your fucking daughter" and left the premises.

22. Anna Nozkowski ran downstairs in an effort to reach her daughter. Her daughter was actually able to say to her "I love you" before passing away from the nine (9) gunshot wounds shot by Mr. Boniface.

23. At all times mentioned herein, Richard Boniface acted recklessly, voluntarily, and with the desire to bring about severe panic, severe injury, and death to Ms. Greene as the intended result of his actions.

24. At all times mentioned herein, Richard Boniface knew with substantial certainty that Ms. Greene would be gravely injured by the hail of bullets that he shot into Ms. Greene's body.

25. Richard Boniface was a Vietnam veteran who had suffered from PTSD for which he was diagnosed in and around 1968. He was treated for this by the defendant and the aforementioned VA facilities through the day he brutally murdered Ashley Greene on August 19, 2019.

26. Since approximately the year 2016 Ashley Greene had worked part time for Richard Boniface in his house in caring for his dog, babysitting his house, stacking firewood, and other errands, as requested by Richard Boniface. Ashley Greene would perform this work for Richard Boniface on an approximate weekly basis. Her work at Boniface's house often coincided with his regularly weekly visits to the aforementioned VA hospitals where he would have to go for psychiatric treatment and counseling. During this period of time, Boniface was also being treated at these VA hospitals for anger and rage issues as well. He was also known by those who treated and counseled him at the aforementioned hospitals as to his hateful expressions and making derogatory comments concerning certain groups and frequently using the words "nigger" and "faggot" to express his hatred. It was during this period of time from 2016-2019 that Ashley Greene's work performed for Richard Boniface at his home put her into close and regular contact with him consistently over this period of time.

27. In particular, Boniface was treated by the defendants at the aforementioned VA facilities from 2016-2019, during which time he was in regular and close contact with the deceased, Ashley Greene. During the same period of time from 2016-2019, Boniface was known to the VA

counselors, nurses, psychiatrists, and psychologists to have deep seated anger issues and a violent temperament with violent tendencies and easy access to multiple firearms.

28. During this period of time, the VA care providers were aware that he was plagued by these anger issues and violent outbursts for which he received counseling at the aforementioned VA facilities. During the same period of time, he also harbored pent up anger and rage toward other groups including those who are gay, black, and Asian which was communicated to the VA medical staff. During the same period of time from 2016-2019, he also communicated to defendant his violent tendencies and anger and rage toward Ashley Greene and his urge and thoughts to harm Ashley Greene with whom he regularly and closely interacted with from 2016-2019.

29. From 2016-2019 the defendant and the aforementioned hospitals, therapists, counsels, psychologists, and psychiatrists were negligent in their failure to warn Ashley Greene and law enforcement of his violent tendencies and his murderous obsession with Ashley Greene.

30. Pursuant to the New York Mental Hygiene Law § 9.46 and other federal statutes, regulations, rules, and VHA and VA Directives and Policies applicable to the aforementioned VA hospitals and their mental health providers, the defendant had a duty to warn Ashley Greene and law enforcement of the serious and significant risk of the imminent and serious harm Richard Boniface presented to her and said parties of the defendant failed to properly warn decedent Greene of the risk of such serious, dire, and imminent harm to her.

31. As a result of the defendant's medical malpractice, gross negligence, and negligence in failing to appropriately warn Ashley Greene and law enforcement of the aforementioned risks, Ashley was viciously and brutally murdered by Boniface on August 19, 2019, with Boniface committing suicide shortly thereafter on the same day.

## As and For a First Cause of Action
### (Medical Malpractice/Negligence)

32. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 31 as if fully set forth herein at length.

33. The defendant and the aforementioned VA medical centers provided psychiatric, psychological, and counseling care and services to Richard Boniface for the time frame of 2016-2019 and for an extended period of time prior thereto.

34. At all times mentioned herein, Richard Boniface was a patient of defendant and the aforementioned VA medical centers and was under their care.

35. At all times herein mentioned, the defendant and its agency, the Department of Veterans Affairs, owned, operated, and managed the aforementioned VA medical centers located in Montrose, NY; Wappingers Falls, NY; and Albany, NY and held itself out to be duly qualified to render proper and adequate medical, psychiatric and counseling services in accordance with good and accepted, state and federal medical standards, procedures, practices, policies, and directives, and in particular to veterans.

36. The defendant, through its agents, servants, employees and associates, carelessly and negligently failed to act on the information that they had obtained from Richard Boniface in the course of rendering medical, psychiatric, and counseling, care, and treatment to Boniface and they carelessly failed to act on the information obtained from Boniface and thereafter failed to warn others, of the threat to others' safety and well-being that Boniface posed, in accordance with good and accepted standards of medical, psychiatric, and counseling practice.

37. More specifically, on and prior to August 19, 2019 and all times hereinafter mentioned, defendant and its agents had a duty and obligation to use reasonable care and skill in hiring, employing, reviewing, managing, and supervising its employees and more particularly its

physicians, psychiatrists, psychologists, nurses, therapists, and counselors that evaluated, treated, and followed up with Richard Boniface.  Defendant, and its agents, including VA Hudson Valley Healthcare System (both Montrose Campus and Castle Point Campus) and Albany Stratton VA Medical Center, its officers, agents, servants, and employees were negligent, careless, and reckless in that they violated their duty to law enforcement and decedent Ashley Greene in the failure, including but not limited to, to provide necessary and proper treatment evaluation and supervision to Richard Boniface; in failing to properly assess and monitor Boniface's physical and mental condition; in failing to provide timely, adequate, and appropriate evaluation to Boniface; in failing to properly monitor and supervise Boniface; in failing to implement a proper and effective protocol to properly assess and evaluate VA patients who may constitute a serious and imminent threat to individuals in the public at large; in failing to use proper skill and proper care in evaluating Boniface on a continuing basis in accordance with generally accepted standards of care; in failing to have adequate, properly trained, and appropriate staff and/or employees experienced in providing care, evaluation and treatment to patients such as Boniface; in failing to skillfully provide care in accordance with generally accepted standards of care and as its failure to provide such services properly and consistently resulted in decedent's serious personal injury and death.  Defendant's failure to use proper skill and proper care to evaluate and assess Boniface resulted in the defendant failing to notify law enforcement and decedent Ashley Greene that Boniface was in fact a serious and imminent threat to the safety and wellbeing of Ashley Greene, despite such facts and communications obtained by defendant which should have indicated same.

    38. As a result of the defendant's negligence, decedent sustained serious and devastating personal injuries, including, but not limited to, nine (9) gunshot wounds; intense and overwhelming pain and suffering; devastating emotional distress; and death.  The aforesaid occurrence and injuries sustained by decedent Ashley Greene were caused solely by reason of the negligence and

8

carelessness of defendant, its agents, servants, and employees in failing to properly care for, assess, and evaluate Richard Boniface in accordance with good and acceptable standards of care and practice; in failing to use reasonable care, judgment, and skill in evaluating Boniface as a serious and imminent threat to the safety and wellbeing of Ashley Greene; in failing to use utilize suitable personnel and supervision; in negligently failing to train, hire, fire, and supervise defendant's agents, servants, and employees; in failing to use their best judgment in the ongoing care, treatment, evaluation, and assessment of Boniface; in failing to render a true and correct evaluation of Boniface as a patient with a long history of PTSD with anger issues, violent tendencies, and unrestricted access to multiple firearms; in failing to protect and prevent Ashley Greene from a murderous assault perpetrated upon her by VA patient Boniface.

39. At all times hereinafter mentioned, the negligence of the employees and/or representative of the United States Government was the proximate cause of decedent Ashley Greene's injuries and death as well as plaintiff's injuries and damages.

40. By reason of the foregoing, plaintiff individually and decedent sustained substantial damages including pain and suffering, emotional terror and distress, loss of life and death and plaintiff demands a judgment against defendant herein for a sum of money which would exceed the jurisdictional limits of all lower courts which would otherwise have jurisdiction over this matter.

### As and For a Second Cause of Action
**(Gross Negligence)**

41. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 40 as if fully set forth herein at length.

42. Defendant, by its officers, employees, agents, and servants, acted in such a careless, reckless, and negligent manner so as to demonstrate a complete disregard for the rights, wellbeing, and safety of decedent Ashley Greene.

43. As a result of defendant's gross negligence, plaintiff individually and decedent sustained catastrophic injuries, incalculable pain and suffering, unimaginable emotional distress and terror during and after the attack, and death.

44. No negligence on the part of the plaintiff nor decedent contributed to the occurrence or injuries.

## As and For a Third Cause of Action
### (Wrongful Death)

45. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 44 as if fully set forth herein at length.

46. The decedent, Ashley Greene, is survived by her mother, Anna Nozkowski. Ashley Greene's son, that she was pregnant with at the time of Richard Boniface's assault did not survive the assault and was murdered as was Ashley Greene.

47. Upon information and belief, the plaintiff individually and the decedent's distributees were dependent upon her for support, maintenance, and guidance.

48. By reason of the foregoing, the plaintiff individually, the heirs and distributees of the decedent were caused to sustain loss of income, society, service, guidance, and inheritance of the decedent.

49. Upon information and belief, the plaintiff individually the distributees of the decedent have necessarily incurred and paid funeral expenses and have incurred expenses in the settlement of decedent's Estate.

50. Immediately prior to the time of her death, the decedent Ashley Greene was 33 years old and in the second trimester of her pregnancy and in good health.

51. By reason of the decedent's death, the plaintiff individually and decedent's distributees sustained damages in an amount and a sum to be determined by a jury after trial of the facts in this case.

## **Prayer for Relief**

WHEREFORE, the plaintiff, Anna Mary Nozkowski, as plaintiff individually and as Administratrix and on behalf of the Estate of Ashley Meg Greene, deceased, demands judgment against defendant as follows:

(a) On the First Cause of Action for a sum to be determined by a jury to compensate plaintiff for her injuries and damages, all of which exceed the jurisdictional limits of any lower court;

(b) On the Second Cause of Action for a sum to be determined by a jury to compensate plaintiff for her injuries and damages, all of which exceed the jurisdictional limits of any lower court;

(c) On the Third Cause of Action for a sum to be determined by a jury to compensate plaintiff for her injuries and damages, all of which exceed the jurisdictional limits of any lower court;

(d) For such other and further relief as plaintiff is entitled to under applicable law and under the circumstances;

(e) All of the foregoing with such interest, costs, and disbursements as are appropriate to the action together with attorney's fees; and

(f) Such other and further relief as to this Court may seem just and proper.

Dated: Goshen, New York
June 1, 2021

FOULKE LAW FIRM

By: *s/ Evan M. Foulke*
Evan M. Foulke, Esq.
Attorney for Plaintiff
55 Main Street
Goshen, New York 10924
(845) 294-4308